**UNITED STATES of America,**

v.

**Adela GOMEZ, et al., Defendants.**

**No. 86 CR 266(s).**

United States District Court,
E.D. New York.

Jan. 23, 1987.

Andrew J. Maloney, U.S. Atty., Brooklyn, N.Y. (Larry Krantz, Asst. U.S. Atty., of counsel), for plaintiff.

David Zapp, New York City, for defendants.

## MEMORANDUM AND ORDER

McLAUGHLIN, District Judge.

Defendant Gomez seeks to suppress certain evidence seized from her apartment. She argues that the search warrant should not have been issued because there was no probable cause to believe that evidence of a crime would be found in her residence. The government disagrees. It also contends that even if there was no probable cause, suppression should not be ordered because the officers executing the warrant reasonably relied in good faith on the Magistrate's determination For the reasons stated below, the motion to suppress is denied.

### Facts

The arrests in this narcotics case resulted from an undercover operation conducted by the Drug Enforcement Administration ("DEA"). During the course of this investigation, the agents determined that Adela Gomez, along with defendant Jaime Newbold, supplied cocaine for distribution by defendants Garcia and Sanchez. Based on this allegation, a warrant for the arrest of Gomez was issued on March 27, 1986. She was arrested in her apartment on East 46th Street in Manhattan on April 2, 1986. Defendant Newbold was arrested on the same day.

During the course of these arrests, agents gained additional information, which was set forth in an affidavit in support of an application for a warrant to search Gomez' apartment. Specifically, during Newbold's arrest the officers discovered records reflecting multiple kilogram transactions and containing numerous references to "Adela." During Gomez' arrest agents observed in her apartment "a quantity of gold jewelry" and a personal telephone book. One of the arresting officers looked in the book and saw the name

and address of a co-defendant.[1] Finally, the affiant stated that in his experience as a DEA agent, narcotics traffickers keep at their residences proceeds and records of drug transactions.

Based on the information in the affidavit, a United States Magistrate in the Southern District of New York issued the warrant. During the search agents seized the telephone book, $22,000 in cash, and other evidence.

### Discussion

#### A. Probable Cause

The standard to be applied in reviewing whether a warrant has issued upon probable cause was set forth in *Illinois v. Gates*, 462 U.S. 213, 238–39, 103 S.Ct. 2317, 2332–33, 76 L.Ed.2d 527 (1983) (quoting *Jones v. United States*, 362 U.S. 257, 271, 80 S.Ct. 725, 736, 4 L.Ed.2d 697 (1960)):

> The task of the issuing magistrate is simply to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit before him ... there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to insure that the magistrate had a "substantial basis for ... conclud[ing]" that probable cause existed.

A "deferential standard of review is appropriate to further the Fourth Amendment's strong preference for searches conducted pursuant to a warrant." *Massachusetts v.*

*Upton*, 466 U.S. 727, 733, 104 S.Ct. 2085, 2088, 80 L.Ed.2d 721 (1984).

It is well settled that "the existence of probable cause to arrest will not necessarily establish probable cause to search." *United States v. Savoca*, 761 F.2d 292, 297 (6th Cir.), *cert. denied*, — U.S. —, 106 S.Ct. 153, 88 L.Ed.2d 126 (1985). In other words, "it cannot follow ... simply from the existence of probable cause to believe a suspect guilty, that there is also probable cause to search his residence." *United States v. Valenzuela*, 596 F.2d 824, 828 (9th Cir.), *cert. denied*, 441 U.S. 965, 99 S.Ct. 2415, 60 L.Ed.2d 1071 (1979). "The critical element in a reasonable search is not that the owner of the property is suspected of crime but that there is reasonable cause to believe that the specific 'things' to be searched for and seized are located on the property to which entry is sought." *Zurcher v. Stanford Daily*, 436 U.S. 547, 556, 98 S.Ct. 1970, 1976, 56 L.Ed.2d 525 (1978).

On what, then, other than the defendant's arrest, did the agents base their application for a warrant? First, Newbold's drug records referred to "Adela." While this indicates that Adela was involved in drug deals with Newbold, it does not give reason to believe that she too would keep records, or that those records, if they existed, would be found in her apartment. Second, the telephone book contained the name of a co-defendant.[2] Again, while this cer-

---

**1.** The affidavit states that the directory contained the name "Garcia" and a reference to "68th Street." It further stated that defendant Gomez had denied knowing defendant Garcia, who resides on 68th Street in Queens, New York. This information, apparently included in the affidavit as a false exculpatory statement, is in error. The 68th Street reference in the directory is under the name "Damaris," the first name of defendant Sanchez. Gomez' saying that she did not know Garcia would thus have no probative value. Even if the affidavit were correct, however, the false exculpatory statement would do nothing to establish probable cause to believe that evidence would be found *in the apartment*. See discussion *infra*.

**2.** Defendant argues that the entry in the telephone book should be disregarded in determin-

ing whether probable cause existed, because the agents' seizure of the book failed to meet one of the requirements for confiscating evidence in plain view—namely, that its incriminating nature be "immediately apparent." *See Coolidge v. New Hampshire*, 403 U.S. 443, 466, 91 S.Ct. 2022, 2038, 29 L.Ed.2d 564 (1971) (plurality opinion); *United States v. $10,000 in U.S. Currency*, 780 F.2d 213, 217 (2d Cir.1986). She contends that the innocuous-looking directory could not be regarded as incriminatory absent a detailed inspection. There is ample authority, however, for the proposition that the "seizure of documents as in 'plain view' is not improper ... notwithstanding the fact that some perusal is needed for the seizing agents to perceive the relevance of the documents to the crime." *United States v. Santarsiero*, 566 F.Supp. 536, 544 (S.D.N.Y.1983) (quoting *United States v. Rega*,

tainly suggests that the two knew each other, it does not suggest that evidence of criminal activity would be located in the apartment. Third, the agents arresting Gomez observed "a quantity of old jewelry." Although the presence of unexplained wealth can be probative of narcotics trafficking, *see United States v. Gomez*, 633 F.2d 999, 1009 (2d Cir.1980), *cert. denied*, 450 U.S. 994, 101 S.Ct. 1695, 68 L.Ed.2d 194 (1981), there is no indication here that the amount or value of the jewelry was substantial or in any way unusual. As such, it is "[not] indicative of very much." *United States v. Cepeda*, 768 F.2d 1515, 1518 (2d Cir.1985).

■ Finally, the affiant proffered his expert opinion that narcotics traffickers often keep records in their residences. While the issuing magistrate is certainly entitled to consider and credit this specialized knowledge, *see United States v. Young*, 745 F.2d 733, 758 (2d Cir.1984), *cert. denied*, 470 U.S. 1084, 105 S.Ct. 1842, 85 L.Ed.2d 142 (1985), it does not alone provide probable cause to search. Indeed, where as here, there is nothing to connect the illegal activities with the arrested person's apartment, to issue a warrant based solely on the agent's expert opinion would be to license virtually automatic searches of residences of persons arrested for narcotics offenses. This would effectively eviscerate the fourth amendment's requirement that there be probable cause to believe "that contraband or evidence of a crime will be found *in a particular place.*" *Gates, supra*, 462 U.S. at 238, 103 S.Ct. at 2332 (emphasis added).

Accordingly, I conclude that the warrant was issued without probable cause. The next issue is whether suppression is warranted.

### B. *Suppression*

The Supreme Court in *United States v. Leon*, 468 U.S. 897, 922, 104 S.Ct. 3405, 3421, 82 L.Ed.2d 677 (1984), held that where a search warrant is later declared to have been lacking probable cause, suppression is not warranted as long as the evidence was obtained in "objectively reasonable reliance on [the] subsequently invalidated search warrant." This "good faith exception" to the exclusionary rule recognizes, however, that suppression

remains an appropriate remedy if: [1)] the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard for the truth; [2)] the issuing magistrate wholly abandoned his judicial role; [3) the affidavit is] "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable"; [4) a warrant is] so facially deficient ... that the executing officers cannot reasonably presume it to be valid.

*Id.* at 923, 104 S.Ct. at 3421–22 (citations omitted) (quoting *Brown v. Illinois*, 422 U.S. 590, 610–11, 95 S.Ct. 2254, 2265, 45 L.Ed.2d 416 (1975) (White, J., concurring in judgment)).

■ Defendant suggests that this case presents the third situation.[3] I disagree. I have concluded that the warrant in this case was defective because it failed to demonstrate "a sufficient nexus ... to [the] particular location [to be searched]," *Savo-*

---

496 F.Supp. 101, 105 n. 7 (S.D.N.Y.1980)); *see United States v. Mannino*, 635 F.2d 110, 115 (2d Cir.1980) (limited inspection permitted; officers not required to ignore significance of items in plain view even where full import cannot be ascertained without some examination).

In any event, inclusion of this item in the probable cause calculus does not aid the government, because, as noted *infra*, it provides no connection between the crime and the apartment such that a search of the premises might be proper. At most the inspection might justify seizure of the book.

**3.** Defendant has not suggested that the reference in the affidavit to Garcia's name in the phone book—when it was really "Damaris" that appeared—is anything more than a simple mistake. Accordingly, the first situation—knowing falsity or reckless disregard for the truth—is not implicated.

*ca, supra,* 761 F.2d at 298. Because " 'there are so many variables in the probable cause equation,' [however,] ... with only a little effort one may locate cases upholding searches in which the supporting affidavit's connection of the person suspected of a crime with the evidence sought and the place to be searched is skeletal." *Id.* at 297–98 (quoting *Gates, supra,* 462 U.S. at 238 n. 11, 103 S.Ct. at 2332 n. 11); *see, e.g., United States v. Rambis,* 686 F.2d 620, 623–24 (7th Cir.1982) (defendant seen entering house after purchasing materials to make detonating device; probable cause sufficient even though no evidence that materials were brought inside); *United States v. Johnson,* 660 F.2d 749, 753 (9th Cir.1981), *cert. denied,* 455 U.S. 912, 102 S.Ct. 1263, 71 L.Ed.2d 452 (1982) (affidavit alleged defendant's participation in major drug deal and proffered expert view that additional evidence would be found at her residence; held sufficient to establish probable cause). Accordingly, I cannot conclude that a "reasonably well-trained officer would have known that the search was illegal despite the magistrate's authorization." *Leon, supra,* 468 U.S. at 922 n. 23, 104 S.Ct. at 3421 n. 23.

> The DEA agent brought his evidence ... to a neutral and detached magistrate. That magistrate determined that probable cause to search existed, and issued a search warrant. There is nothing more the officer could have or should have done under these circumstances to be sure his search would be legal. The magistrate, whose duty it is to interpret the law, determined that [there was] probable cause; it was reasonable for the officer to rely on this determination.

*United States v. Thomas,* 757 F.2d 1359, 1368 (2d Cir.), *cert. denied,* — U.S. —, 106 S.Ct. 66, 88 L.Ed.2d 54 (1985).

Thus, because the officers' actions were objectively reasonable, under *Leon* the motion to suppress should be, and hereby is, denied.

SO ORDERED.