**UNITED STATES of America**

v.

**Hector Luis RIOS.**

**Crim. No. 3:94CR112(AHN).**

United States District Court,
D. Connecticut.

April 3, 1995.

(S.D.N.Y.1983) (citing cases), *aff'd,* 762 F.2d 991 (2d Cir.), *cert. denied,* 474 U.S. 826, 106 S.Ct. 85, 88 L.Ed.2d 69 (1985). All doubts about a warrant's validity, therefore, should be resolved in favor of upholding the warrant. *See, e.g., United States v. Travisano,* 724 F.2d 341, 345 (2d Cir.1983).

Theodore Heinrich, Joseph Martini, Office of U.S. Atty., Bridgeport, CT, for plaintiff.

Bruce Koffseky, Stamford, CT, for defendant.

## RULING ON MOTION TO SUPPRESS

NEVAS, District Judge.

Defendant Hector Luis Rios ("Rios") is charged in five counts of a thirty-eight count indictment with violating 18 U.S.C. § 1962(c) (racketeering), 18 U.S.C. § 1962(d) (racketeering conspiracy), 18 U.S.C. §§ 1959(a)(1), 1959(a)(2) (violent crimes in aid of racketeering), 21 U.S.C. §§ 841(a)(1), 846 (drug conspiracy) and 18 U.S.C. §§ 922(g)(1), 924(a)(2) (firearm possession by a felon).

Currently pending before the court is Rios's motion to suppress the evidence seized during the June 26, 1994 search of his residence, 490 Broad Street, Building 2, Unit 203, Bridgeport, Connecticut. For the reasons that follow, that motion [doc. # 344] is DENIED.

## STANDARD

It is the court's duty to review the affidavit to determine whether there was a "substantial basis" for the Magistrate's conclusion that probable cause existed. *Illinois v. Gates,* 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983) (quoting *Jones v. United States,* 362 U.S. 257, 271, 80 S.Ct. 725, 736, 4 L.Ed.2d 697 (1960)). "[A]fter the fact scrutiny by courts of the sufficiency of an affidavit should not take the form of *de novo* review[,]" *id.* 462 U.S. at 236, 103 S.Ct. at 2331, and the Magistrate's determination is entitled to " 'great deference.' " *Id.* (quoting *Spinelli v. United States,* 393 U.S. 410, 419, 89 S.Ct. 584, 591, 21 L.Ed.2d 637 (1969)). Moreover, there is a general presumption in favor of a warrant's validity. *See, e.g., United States v. Tufaro,* 593 F.Supp. 476, 481

## DISCUSSION

Rios argues that the affidavit of FBI Special Agent Amy Jo Lyons ("Lyons"), which was presented to a United States Magistrate Judge in support of the government's search warrant application, does not support the Magistrate's finding of probable cause to search his apartment because: (1) the allegations pertaining to him were stale, and (2) it contains no facts to link the evidence sought to his residence. Rios argues further that the "good faith exception" announced in *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984) is inapplicable. The government responds that the affidavit more than adequately supports the Magistrate's finding of probable cause to search Rios's apartment and that it was objectively reasonable for the searching officers to believe that the warrant was valid.

Having reviewed Lyons's affidavit and the parties' memoranda and having held a hearing on the motion, the court finds that the warrant was not supported by probable cause because the affidavit did not establish a sufficient nexus to link Rios's alleged criminal activity to his residence. The court further finds, however, that a reasonably well-trained officer acting in objective good faith would not have concluded that the warrant was invalid, and therefore declines to suppress the evidence seized.

### A. Staleness

Rios first argues that the information in the affidavit pertaining to him was stale because "there was a six to eight week delay between the alleged contact with defendant Rios and ... the signing of the warrants." (Rios's Mem. at 10.) The government responds that "the information in the warrant clearly established that Rios was involved in ongoing drug trafficking and the continuing

criminal activity of the Latin Kings[,]" (Gov't's Mem. at 13), and that this continuous involvement vitiates Rios's staleness arguments.

■ "While there is no bright line rule for staleness, the facts in an affidavit supporting a search warrant must be sufficiently close in time to the issuance of the warrant and the subsequent search conducted so that probable cause can be said to exist as of the time of the search and not simply as of some time in the past." *United States v. Wagner,* 989 F.2d 69, 75 (2d Cir.1993). The government is correct that "[f]acts of past criminal activity that by themselves are too stale can be sufficient if the affidavit also establishes a pattern of continuing criminal activity so there is reason to believe that the cited activity was probably not a one-time occurrence." *Id.* See also *Rivera v. United States,* 928 F.2d 592, 602 (2d Cir.1991) ("In investigations of ongoing narcotics operations, we have held that intervals of weeks or months between the last described act and the application for a warrant did not necessarily make the information stale."); *United States v. Rowell,* 903 F.2d 899, 903 (2d Cir.1990) ("Narcotics conspiracies are the very paradigm of the continuing enterprises for which the courts have relaxed the temporal requirements of non-staleness.").

The court finds that the facts in the affidavit implicating Rios in the activities of the Latin Kings were not stale as of the date that the Magistrate issued the warrant. The court further finds that the affidavit paints the picture of an on-going criminal enterprise in which Rios's involvement was also of an on-going nature. Rios's contention that the facts that pertained to him were stale is therefore rejected.

### B. Nexus Between Rios's Alleged Criminal Activity and his Residence

The court easily concludes that Lyons's affidavit contains sufficient facts to support the finding of probable cause to believe that Rios was involved in the criminal activity of the Almighty Latin Charter Nation ("Latin Kings"), including narcotics trafficking. To the extent that Rios argues to the contrary, (*see, e.g.,* Rios's Mem. at 4) (arguing that

"there is not a scintilla of evidence that [the defendant] was a player" in the on-going narcotics operations), his arguments are rejected.

■ That there was probable cause to suspect Rios of involvement in illegal activity, however, does not answer the question of whether there was probable cause to search his residence for evidence of that involvement. It is well settled that "[p]robable cause to arrest an individual does not, in and of itself, provide probable cause to search that person's home or car." *United States v. Santarsiero,* 566 F.Supp. 536, 538 (S.D.N.Y. 1983); see also *Zurcher v. Stanford Daily,* 436 U.S. 547, 556, 98 S.Ct. 1970, 1976, 56 L.Ed.2d 525 (1978) ("The critical element in a reasonable search is not that the owner of the property is suspected of crime but that there is reasonable cause to believe that the specific 'things' to be searched for and seized are located on the property to which entry is sought.").

■ "To establish probable cause to search a residence, two factual showings are necessary—first, that a crime was committed, and second, that there is probable cause to believe that evidence of such crime is located at the residence." *Travisano,* 724 F.2d at 345 (citing *United States v. Harris,* 403 U.S. 573, 584, 91 S.Ct. 2075, 2082, 29 L.Ed.2d 723 (1971)). The second of these factual showings requires that "there be a fair probability that the premises will yield the objects specified in the search warrant." *Id.* at 346. The court recognizes that, "in making a probable cause determination, a judge 'is entitled to draw reasonable inferences about where evidence is likely to be kept, based on the nature of the evidence and the type of offense.'" *United States v. Maneti,* 781 F.Supp. 169, 177 (W.D.N.Y.1991) (quoting *United States v. Malin,* 908 F.2d 163, 166 (7th Cir.) (citation omitted), *cert. denied,* 498 U.S. 991, 111 S.Ct. 534, 112 L.Ed.2d 544 (1990)).

■ A close review of Agent Lyons's sixty-nine page affidavit reveals that the only allegations to suggest that evidence of Rios's alleged criminal activity would be located in his home are Lyons's general averments

based on her training and experience. Lyons states, for example, that large scale drug traffickers tend to keep records, receipts, documents, contraband, paraphernalia associated with drug trafficking, large amounts of cash, weapons, and ammunition in a secure place to which they have ready access, such as their homes or businesses. (Lyons Aff. ¶ 122.)

The government essentially conceded at the hearing that, although Lyons's affidavit provides factual support for the conclusions that Rios was involved in the criminal activities of the Latin Kings and that he lived at 490 Broad Street,[1] it contains no allegations of *fact* linking Rios's alleged illegal activity to his residence. Counsel for the government stated that "in large measure what connects the drug trafficking to [Rios's] home is the submission by Agent Lyons" that, based on her training and experience, drug traffickers tend to keep certain items related to their illegal activities at their homes. When asked whether there was anything more in the affidavit that would indicate that Rios would keep such evidence at his residence, the government responded: "No, other than Agent Lyons with respect to her training and experience."

An agent's expert opinion on the location of evidence is certainly an important factor to be considered in a warrant application. *United States v. Fama,* 758 F.2d 834, 838 (2d Cir.1985). The question here, however, is whether the expert opinion of a government agent based on her knowledge of the practices of large-scale drug traffickers can, by itself, provide an adequate basis for a determination that probable cause exists to search the residence of an individual suspected to be involved in drug trafficking.

The Second Circuit has not squarely addressed this question. In *United States v. Benevento,* the Second Circuit wrote that an agent's expert opinion "standing alone, *might not* be sufficient to establish a link" between a suspect's residence and his criminal activity. *United States v. Benevento,* 836 F.2d 60,

71 (2d Cir.1987) (emphasis added), *cert. denied,* 486 U.S. 1043, 108 S.Ct. 2035, 100 L.Ed.2d 620 (1988). To support this proposition, the *Benevento* court relied on *United States v. Gomez,* 652 F.Supp. 461 (E.D.N.Y. 1987), the only case in the Second Circuit to hold expressly that a government agent's opinion by itself is an insufficient predicate for a finding of probable cause to search the residence of a suspected drug trafficker.

In *Gomez,* then-District Judge McLaughlin invalidated a search warrant finding that the supporting affidavit contained no facts to link the defendant's alleged criminal activity to his residence and that the agent's expert opinion that "narcotics traffickers often keep records in their residences" was an insufficient basis for finding probable cause to search the residence. *Gomez,* 652 F.Supp. at 463. Judge McLaughlin wrote that "where ... there is nothing to connect the illegal activity with the arrested person's apartment, to issue a warrant based solely on the agent's expert opinion would be to license virtually automatic searches of residences of persons arrested for narcotics offenses." *Id.* He found, however, that the searching officer's reliance on the invalid warrant was objectively reasonable under *United States v. Leon* and thus denied the defendant's motion to suppress. *Id.* at 464.

The court finds the reasoning of *Gomez* to be persuasive. In reaching this conclusion, the court emphasizes that Lyons's affidavit contains *no facts* to support an inference that evidence of Rios's criminal activity would be found at his home. While the court recognizes that the probable cause determination must be made on a case-by-case basis and that there is no formula for establishing probable cause, it is instructive to consider what Lyons's affidavit might have but did not include to establish a nexus to Rios's apartment. Lyons's affidavit might have stated, for example, that a confidential informant claimed to know that Rios kept a weapon or ammunition at his home. *See, e.g., United States v. Morales,* 851 F.Supp. 112, 116

---

1. The affidavit provides probable cause for the conclusion that Rios resides at 490 Broad Street, Building 2, Unit 203, Bridgeport, Connecticut. (*See* Lyons Aff. ¶ 119) ("Based on wire intercepts and utility and telephone subscriber information, I know that Hector Luis Rios ... live[s] at 490 Broad Street, Building 2, Unit 203.").

(S.D.N.Y.1994) (finding probable cause to search residence where confidential informant identified defendant as "a member of a large heroin distribution organization who was keeping weapons at the apartment"). Similarly, Lyons's affidavit might have established that Rios was observed carrying evidence of his illegal activity into or out of his building, or that he engaged in a drug transaction shortly before entering or after leaving his home. *See, e.g., United States v. Alexander,* No. 92CR220(SWK), 1993 WL 97407, at *4, 1993 U.S.Dist. LEXIS 4006, at *12 (S.D.N.Y. Apr. 1, 1993) (finding probable cause to search residence where defendant was observed bringing proceeds of drug transaction into residence); *United States v. Londono,* 659 F.Supp. 758, 766 (E.D.N.Y. 1987) (finding probable cause to search residence where defendant was arrested shortly after leaving residence and was carrying narcotics records and expensive jewelry). Or instead, the affidavit might have reported that Rios was seen arriving at a drug transaction in a vehicle later observed at his home. *See, e.g., Travisano,* 724 F.2d at 346 (finding probable cause to search residence where there was nexus between residence and vehicle used in commission of a crime). Alternatively, the affidavit might have demonstrated that drugs were mailed to Rios's home, *see, e.g., United States v. Moore,* 968 F.2d 216, 223 (2d Cir.) (finding probable cause to search apartment for drug records at address to which large packages of drugs were sent), *cert. denied,* —— U.S. ——, 113 S.Ct. 480, 121 L.Ed.2d 385 (1992), or that Rios made or received calls at his home immediately following or proceeding a drug transaction.[2] *See, e.g., United States v. Hulett,* 22 F.3d 779, 781 (8th Cir.1994) (probable cause to search residence of suspected drug trafficker where call was placed to his home phone number by co-conspirator immediately after co-conspirator discussed proposed drug transaction with undercover officers). The court reiterates that it cites these cases not to suggest that any one of these allegations is required to establish probable cause, but to illustrate that Lyons's affidavit lacked any similar facts to suggest that evidence would likely be located at Rios's apartment.

Although courts outside the Second Circuit have determined that an officer's belief, based on his training and experience, can constitute a sufficient nexus to justify the search of a suspected drug trafficker's residence,[3] this court believes that the better rule is the one applied in *Gomez. See also United States v. Schultz,* 14 F.3d 1093, 1097 (6th Cir.1994) ("While an officer's 'training and experience' may be considered in determining probable cause, it cannot substitute for the lack of evidentiary nexus.") (citations omitted). Considering the affidavit as a whole and based on the totality of the circumstances, *Gates,* 462 U.S. at 238, 103 S.Ct. at 2332, the court finds that Lyons's general averments based on her training and experience do not, standing alone, constitute a

**2.** Although the government represented at the hearing that Rios placed a call from his home to another Latin Kings member, the paragraph of the affidavit to which the government referred, paragraph number 105, does not indicate that Rios placed that call from his home. In addition, even if the affidavit had made clear that Rios placed this call from his home, the court is not persuaded that that fact would give rise to probable cause to search his residence. *Compare United States v. D'Aquila,* 719 F.Supp. 98, 118 (D.Conn.1989) (Nevas, J.) (finding probable cause to search residence of defendant suspected in gambling offenses where affidavit reflected a "high volume of calls forwarded—a device frequently used in *this* bookmaking operation—to the [defendant's] residence" supporting inference that evidence of bookmaking operation would be found at his home) (emphasis in original).

**3.** *See United States v. Restrepo,* 994 F.2d 173, 188–89 (5th Cir.1993) (finding probable cause to search residence where affidavit suggested defendant's involvement in drug activity and officer stated that in his experience drug traffickers secrete evidence of their illegal activities in their homes); *United States v. Thomas,* 989 F.2d 1252, 1254 (D.C.Cir.1993) (same); *United States v. Johnson,* 660 F.2d 749, 753 (9th Cir.1981) (same), *cert. denied,* 455 U.S. 912, 102 S.Ct. 1263, 71 L.Ed.2d 452 (1982). *See also United States v. Pitts,* 6 F.3d 1366, 1369 (9th Cir.1993) (finding probable cause to search where affidavit established suspect's involvement in drug trafficking and stating that the Ninth Circuit has recognized that "in the case of drug dealers, evidence is likely to be found where the dealers live.") (citations and internal quotations omitted); *United States v. Williams,* 974 F.2d 480, 481 (4th Cir.1992) (finding probable cause to search motel room where affidavit established only that defendant was dealing drugs and currently resided in motel room).

"substantial basis" for the issuance of this search warrant. *Id.* at 239, 103 S.Ct. at 2332. The court therefore concludes that the search warrant for Rios's residence lacked probable cause.

## C. Good Faith Exception

■ Finally, Rios argues that the good faith exception articulated in *United States v. Leon* is inapplicable. The court disagrees.

In *Leon*, the Supreme Court addressed the question of whether "the Fourth Amendment exclusionary rule should be modified so as not to bar the use in the prosecution's case in chief of evidence obtained by officers acting in reasonable reliance on a search warrant issued by a detached and neutral magistrate but ultimately found to be unsupported by probable cause." *Leon*, 468 U.S. at 900, 104 S.Ct. at 3409. The *Leon* Court answered that question in the affirmative, holding that evidence seized pursuant to a warrant is admissible even if the warrant lacks probable cause ... if the executing officers relied upon it in "objective good faith." *Id.* at 920, 104 S.Ct. at 3419. The test of objective good faith is "whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." *Id.* at 922 n. 23, 104 S.Ct. at 3420 n. 23.

If, however, an officer has "no reasonable grounds for believing that the warrant was properly issued[,]" then exclusion of the evidence seized pursuant to that warrant is an appropriate remedy. *Leon*, 468 U.S. at 922–23, 104 S.Ct. at 3420–21. *Leon* describes four circumstances in which reliance on a warrant would not be objectively reasonable: (1) where the issuing magistrate is misled by an affiant who knowingly or recklessly disregards the truth; (2) where a magistrate abandons his neutral and detached role as a judicial officer; (3) where the affidavit is so lacking in probable cause that reliance upon it would be objectively unreasonable, and (4)

where the warrant is facially invalid because it lacks sufficient particularity. *See id.* at 923, 104 S.Ct. at 3420–21.

Rios does not argue that either of the first two situations described by the *Leon* court is implicated here. He does seem to argue, though, that the search warrant was facially invalid. He contends, quoting *United States v. George*, 975 F.2d 72 (2d Cir.1992), that "one who simply looked at the warrant, ... would ... suspect it was invalid." (Rios's Mem. at 12) (quoting *George*, 975 F.2d at 78) (citations omitted). The court finds that, to the contrary, the warrant was not "so facially deficient ... in failing to particularize the place to be searched or the things to be seized ... that the executing officers [could not have] reasonably presume[d] it to be valid." *Leon*, 468 U.S. at 923, 104 S.Ct. at 3421. The apartment to be searched was clearly identified and the list of items to be seized was particularized.[4] Rather than containing a "catch-all" description, such as the Second Circuit disapproved of in *United States v. Buck*, 813 F.2d 588, 593 (2d Cir.), *cert. denied*, 484 U.S. 857, 108 S.Ct. 167, 98 L.Ed.2d 121 (1987), or simply identifying general categories of items, the list of items to be seized from Rios's residence, though extensive, was specific. No greater particularity with respect to either location or items to be seized is required.

Neither is this a case in which the affidavit offered in support of the warrant is " 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.' " *Leon*, 468 U.S. at 923, 104 S.Ct. at 3420–21 (quoting *Brown v. Illinois*, 422 U.S. 590, 610–11, 95 S.Ct. 2254, 2265, 45 L.Ed.2d 416 (1975) (Powell, J., concurring)). Lyons's affidavit is extremely detailed and specific in most respects; no officer reviewing it would have discerned that it lacked probable cause to support a search of Rios's apartment. Here, as in *Leon*, the warrant application "was supported by much more

---

4. In addition to objecting to the warrant's alleged lack of particularity, Rios charges that "identical [lists of items to be seized] were part of the search warrants for seventeen (17) other locations and one (1) vehicle." (Rios's Mem. at 2.) Although Rios is correct that the same affidavit was offered in support of eighteen search

warrants, the government represents that the list of items to be seized that was attached to the search warrant for 490 Broad Street was tailored to the search of Rios's residence. *See United States v. Mitchell*, 372 F.Supp. 1239, 1257 (S.D.N.Y.1973) (relying "upon the good faith of the Government's representation").

than a 'bare bones' affidavit. The affidavit related the results of an extensive investigation and ... provided evidence sufficient to create disagreement among thoughtful and competent judges as to the existence of probable cause." *Id.* 468 U.S. at 926, 104 S.Ct. at 3422.

Furthermore, given that the law of the Second Circuit on the dispositive issue in this case is equivocal, a reasonably well trained officer could not have known that Lyons's affidavit contained insufficient indicia of probable cause. At most, "[w]hat the officers failed to do was anticipate" this court's holding today. *Buck,* 813 F.2d at 593. "There is nothing more the officer could have or should have done under these circumstances to be sure [the] search would be legal." *United States v. Thomas,* 757 F.2d 1359, 1368 (2d Cir.), *cert. denied,* 474 U.S. 819, 106 S.Ct. 66, 88 L.Ed.2d 54 (1985). *See also Schultz,* 14 F.3d at 1097–98 (finding officer's training and experience an insufficient nexus to establish probable cause to search, but declining to suppress under good faith exception) (citations omitted); *United States v. Savoca,* 761 F.2d 292, 297 (6th Cir.), *cert. denied,* 474 U.S. 852, 106 S.Ct. 153, 88 L.Ed.2d 126 (1985) (finding no probable cause to search because of insufficient nexus between criminal activity and location but declining to suppress under good faith exception).

The court finds that the searching officers' reliance on the affidavit and warrant was objectively reasonable and declines to suppress the evidence seized.

### CONCLUSION

Based on the foregoing, Rios's Motion to Suppress [doc. # 344] is DENIED.

SO ORDERED.