### UNITED STATES of America

v.

Ignacio **MORALES** a/k/a "Flaco", Juan Rosado a/k/a "Apache", Michael Arroyo, Reynaldo Santos a/k/a "Juice", Juan Viruet a/k/a "Phil" a/k/a "Seaweb" a/k/a "Fil", Raymond Crespo a/k/a "Cano", Carmen Saez, Carlos Santos a/k/a

---

"Tony", Josue Barreto a/k/a "Josh", Luis Andino a/k/a "GQ" a/k/a "Lou", Jamie Renae Torado a/k/a "Rene" a/k/a "Van Dam", Gilberto Torres, Melvin Brown a/k/a "Heavy", Jose Polanco, Alfredo San Miguel.

No. 93 Cr. 291 (AGS).

United States District Court,
S.D. New York.

March 21, 1994.

Assistant U.S. Attys. John M. Desmarais and Mark P. Goodman, New York City, for the U.S.

Allan P. Haber, New York City, for defendant Reynaldo Santos.

Law Offices of Benjamin Brafman, P.C., Charles A. Ross, New York City, for defendant Luis Andino.

## OPINION AND ORDER

SCHWARTZ, District Judge:

### BACKGROUND

The defendants are charged in a thirteen count Indictment. Count One charges each defendant with conspiracy to distribute and possess with intent to distribute more than one kilogram of heroin, in violation of 21 U.S.C. § 846, and specifies seven overt acts committed in furtherance of the charged conspiracy. Counts Two through Nine charge certain of the defendants with distributing and possessing with intent to distribute heroin in violation of 21 U.S.C. §§ 812, 841(a)(1), and 841(b)(1)(C), and 18 U.S.C. § 2. Counts Ten through Thirteen charge certain defendants with firearms offenses, specifically 18 U.S.C. §§ 922(g)(1), 924(a)(2), 924(c), and 2.

Defendants Ignacio Morales, Juan Rosado, Michael Arroyo, Carmen Saez, Melvin Brown, and Alfredo San Miguel have all already submitted motions, which motions have been ruled upon by Judge Conboy in his November 10, 1993, Amended Opinion and Order, 1993 WL 465209 ("November 10 Amended Opinion and Order").

Defendant Reynaldo Santos, a/k/a "Juice," ("Santos") moves for severance, suppression of evidence obtained from a search of his residence at the time of his arrest, and leave to join the motions of his codefendants that inure to his benefit. The Government consents to the Santos motion requesting leave to join in the motions of his codefendants that inure to his benefit; therefore, the Court grants this motion.

Defendant Louis Andino, a/k/a "GQ," a/k/a "Lou," ("Andino") moves for severance, suppression of evidence taken from his person at the time of his arrest, and an order compelling the Government to disclose information about the confidential informant in this case, including his name, date of birth, and his criminal record.

For the reasons set forth below, the motions are denied, with the exception noted above of the Santos motion to join in the motions of other defendant insofar as they inure to his benefit.

### DISCUSSION

#### I. Motions for Severance

Defendants Santos and Andino move for severance of their trials from the trial of their codefendants. Defendant Andino argues that a joint trial in this case will result in a miscarriage of justice due to "spillover" prejudice. Def. Andino Memorandum, ¶ 28. Defendant Santos argues that he will be severely prejudiced by the scale of the trial and the great disparity in the amount of evidence that will be offered against him. Affidavit of Allan P. Haber, ¶ 14.

Judge Conboy addressed these exact issues in great detail in his November 10 Amended Opinion and Order. For the reasons set forth in that opinion, defendants Santos and Andino have failed to carry their heavy burden on this issue and are thus not entitled to a severance. *See,* November 10 Amended Opinion and Order, pp. 9–14.

#### II. Defendant Santos' Motion to Suppress

Defendant Santos requests that the Court suppress evidence taken from his residence [1]

---

1. The residence in question is the second floor apartment on the left side of the building located at 2270 Story Avenue, Bronx, New York ("the apartment" or "Santos' residence"). The evi-

pursuant to a Search Warrant Affidavit signed by Magistrate Dolinger on March 26, 1993. (A copy of the Search Warrant Affidavit is attached as Exhibit 4 to the Government's Memorandum.) Specifically, Santos contends that insufficient probable cause existed to support the Search Warrant Affidavit to search his evidence. We cannot agree. For the reasons set forth below, the Court finds that the Government had probable cause to search Santos' residence on March 30, 1993.

■ The standard for probable cause has been clearly articulated in this Circuit. " 'Probable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity.' " *United States v. Bakhtiari,* 913 F.2d 1053, 1062 (2d Cir.1990) (quoting *Illinois v. Gates,* 462 U.S. 213, 244 n. 13, 103 S.Ct. 2317, 2335 n. 13, 76 L.Ed.2d 527 (1983)), *cert. denied,* 499 U.S. 924, 111 S.Ct. 1319, 113 L.Ed.2d 252 (1991); *United States v. Cruz,* 834 F.2d 47, 50 (2d Cir.1987). The determination of whether the Government made such a showing prior to issuance of a search warrant must be reviewed in a practical light, *see Illinois v. Gates,* 462 U.S. at 241, 103 S.Ct. at 2333–34, because "probable cause is a flexible, common-sense standard," *Texas v. Brown,* 460 U.S. 730, 742, 103 S.Ct. 1535, 1543, 75 L.Ed.2d 502 (1983).[2]

The Government proffers several bases of probable cause for the March 30, 1993 search. Gov't Mem. at 7–8. First, the government contends that Complaint Affidavit, attached to the Search Warrant Affidavit in Gov't Exhibit 4, established probable cause that defendant Santos was involved in a large scale heroin distribution conspiracy.[3] Sec-

ond, the Government points out that CW was in the apartment several times, Search Warrant Aff. ¶ 12, and saw more than once, two firearms—a Derringer and a .380 caliber gun—in the apartment. *Id.* Third, defendant Santos was living in the apartment prior to execution of the search warrant on March 30, 1993. *Id.* Finally, the Government argues that ATF Special Agent Reid's allegations about his experience with additional tools of the drug trade besides firearms, *id,* at ¶ 13, enhanced the probable cause and the permissible scope of the search.

Defendant Santos does not contest the factual underpinnings of the foregoing Government allegations. Rather, he argues that probable cause did not exist because:

(1) He did not live in the apartment on March 12, 1993, but rather moved into the apartment in late March.[4] Santos affidavit, ¶ 2.

(2) Nowhere does the Search Warrant Affidavit state that "Mr. Santos engaged; the distribution of narcotics from his residence." Def. Santos Memorandum at 7.

(3) The Search Warrant Affidavit does not allege that the seized gun belonged to Santos or that he possessed it. *Id,* at 6–8.

(4) The information relied upon by the Government in the Search Warrant was twelve days old and therefore stale. *Id,* at 10–11. Each of these arguments is meritless, and they are addressed in turn below.

■ In this Circuit, "if an informant's declaration is corroborated in material respects, the entire account may be credited, including parts without corroboration." *United States v. Wagner,* 989 F.2d 69, 73 (2d

---

dence obtained in the March 30, 1993 search consists of a .22 caliber Derringer, 25 grams of cocaine, $320 and various other items.

**2.** Clearly, however, the Government must in every instance demonstrate that probable cause existed for a search without making reference to the seized evidence itself. *United States v. Perea,* 986 F.2d 633, 643 (2d Cir.1993).

**3.** More precisely, in the Complaint Affidavit, Special Agent Delano Reid, of the Bureau of Alcohol, Tobacco and Firearms ("ATF"), states that the Government's cooperating witness ("CW") had informed the Government that defendant Santos

oversaw payment to the persons who sold the "HOT STUFF" brand of heroin on the street. Complaint Aff. ¶ 6(d). In addition, Special Agent Reid details several conversations between CW and defendant Santos, in which defendant Santos evidences his participation in transactions involving the sale of "HOT STUFF" heroin. *See, e.g.,* Complaint Aff. ¶ 13(e)(k)(1).

**4.** In ¶ 12 of the Search Warrant Affidavit, Special Agent Reid stated that "as recently as on or about March 12, 1993" CW had seen firearms in the apartment.

Cir.). The Complaint Affidavit, ¶ 4, in which Special Agent Delano sets forth the instances in which information supplied by the CW in the past has been corroborated, establishes the reliability of the CW. Given the reliability of the CW, we find the Government's uncontroverted allegations, *supra* at 4, to establish probable cause to search the apartment for firearms. *Zurcher v. Stanford Daily*, 436 U.S. 547, 556, 98 S.Ct. 1970, 1976–77, 56 L.Ed.2d 525 (1978) ("The critical element in a reasonable search is … reasonable cause to believe that the specific things to be searched for and seized are located on the property to which entry is sought"). We find, moreover, that the scope of the search was permissibly expanded in light of Special Agent Delano's allegations regarding his experience with additional tools of the drug trade which are often found in the vicinity of firearms. Search Warrant Affidavit, ¶ 13; *see United States v. Young*, 745 F.2d 733, 758 (2d Cir.1984) (in issuing search warrant, magistrate is entitled to consider and credit specialized knowledge of expert affiant regarding common tools used by narcotics traffickers), *cert. denied*, 470 U.S. 1084, 105 S.Ct. 1842, 85 L.Ed.2d 142 (1985).[5]

The foregoing discussion also reveals the inadequacy of defendant Santos' contention that the Search Warrant Affidavit is defective because it fails to mention that Mr. Santos was engaged in the distribution of narcotics from the apartment. Def.Mem. at 7. The Search Warrant Affidavit was not based on defendant Santos' distribution of narcotics from his residence, but was instead based upon the fact the CW identified him as a member of a large heroin distribution organization who was keeping weapons at the apartment. Search Warrant Aff., ¶ 12. We found *supra* at 5–6 that probable cause existed to search for such weapons, and that Special Agent Reid's expert opinion regarding other tools of the drug trade warranted expansion of the search to include drugs and cash. Thus, defendant Santos' argument regarding the failure of the Search Warrant Affidavit to mention distribution of narcotics from the apartment is unconvincing.

■ Defendant Santos' assertion that the Search Warrant Affidavit is defective because Santos (allegedly) did not move into the apartment until late March, Santos Aff., ¶ 2, proves similarly meritless. As a threshold matter, evidence in the record persuades us that Santos' contention that he did not exercise control over the apartment on March 12 is not credible. *See,* Gov't Exhibit 5, p. 4, telephone call dated February 27, 1993 (draft transcript of consensual recording made between the CW and defendant Santos reveals that by February 27, 1993 Santos had obtained keys to the apartment and was beginning to move in). We find, moreover, that even if we were to assume Santos' allegation to be true, it is irrelevant to the Search Warrant Affidavit because that document states only that the CW observed guns in the apartment "on or around March 12" and informed the Government that Santos lived there on or about that date—it is irrelevant, therefore, whether defendant Santos was living in the apartment exactly on March 12, or whether it was actually March 12, 1993 when the CW saw the guns. The critical point is that the CW was in the apartment several times, Santos was (by his own admission) living in the apartment prior to March 30, 1993, and that the CW observed guns in the apartment more than once. These facts fail to negate, and in fact affirm, our finding of probable cause.[6]

---

5. The instant case is thus distinguishable from *United States v. Gomez*, 652 F.Supp. 461 (E.D.N.Y.1987), relied upon by defendant Santos. In *Gomez*, the Court did not find probable cause for a search where a federal agent's expert opinion in an affidavit constituted the *sole* support for the search. *Id*, at 463 ("[affiant's expert opinion] does not alone provide probable cause to search"). Here, the Government has submitted more than Special Agent Reid's expert opinion, namely, the specific allegations that the CW was in the apartment and observed guns several times. Search Warrant Affidavit, ¶ 12.

6. We also reject defendant Santos' related contention that the Search Warrant Affidavit is defective because it fails to allege specifically that the seized gun belonged to Santos or that he possessed it. The Search Warrant affidavit alleges that Santos lived in the apartment at the time of the search; therefore, Santos' argument must fail because one is in constructive possession of those items in one's apartment. *See, e.g.,* L. Sand, J. Siffert, W. Loughlin, & S. Reiss, *Modern Federal Jury Instructions,* Instruction 35–48 (Matthew Bender 1993).

Finally, we cannot agree with defendant Santos that the information relied upon by the Government was stale by the March 30, 1993, the date of the search. Def. Memorandum at 10–11. Prior to execution of the search, the Government had a reasonable basis to believe that Santos was an integral member of a large scale heroin distribution organization, Search Warrant Aff., ¶ 4–6, and had been informed by the CW that s/he had seen guns in the Santos residence on more than one occasion. *Id,* at ¶ 12. Thus, both defendant's involvement in the narcotics conspiracy and his storage of firearms at the apartment were ongoing in nature. There was no indication, moreover, that circumstances had changed between about March 12, 1993 (the last time the CW saw the guns) and March 26, 1993. In light of the foregoing, we find that the information contained in the Search Warrant Affidavit was not so stale as to extinguish probable cause. *See, United States v. Beltempo,* 675 F.2d 472 (2d Cir.1982) (rejecting rigid counting of days or weeks in evaluating probable cause determinations, and adopting a more flexible and common-sense approach to issues such as staleness), and cases cited therein.

### III. Defendant Andino's Motion to Suppress

Defendant Andino argues that no probable cause existed for his arrest; therefore, evidence seized from him pursuant to his arrest, namely various documents and telephone numbers, should be suppressed. We disagree.

On or about April 13, 1993, a Grand Jury sitting in this District indicted defendant Andino. Indictment for 93 Cr. 291, attached as Exhibit 1 to Gov't Memorandum. In doing so, the Grand Jury found probable cause to charge defendant Andino. Based upon this Indictment, Magistrate Judge Bernikow issued a warrant for defendant Andino's arrest. Arrest Warrant for Louis Andino, 93 Cr. 291, attached as Exhibit 3 to Gov't Memorandum. Pursuant to this arrest warrant,

defendant Andino was arrested on or about July 21, 1993.[7]

Given the above chain of events, defendant Andino's motion to suppress is in substance a motion alleging a failure of the Indictment. Defendant Andino, however, has identified no specific infirmities with the Indictment or the Grand Jury. In this Circuit, an indictment returned by a legally constituted Grand Jury, if facially valid, is sufficient to require a trial on the merits. *See United States v. Calandra,* 414 U.S. 338, 343, 94 S.Ct. 613, 617–18, 38 L.Ed.2d 561 (1974); *United States v. Diaz,* 675 F.Supp. 1382, 1389 (E.D.N.Y.1987), *aff'd,* 878 F.2d 608 (2d Cir.), *cert. denied,* 493 U.S. 993, 110 S.Ct. 543, 107 L.Ed.2d 540 (1989). Further, "an indictment, if valid on its face, may not be challenged on the ground that it is based on inadequate evidence." *United States v. Casamento,* 887 F.2d 1141, 1182 (2d Cir. 1989), *cert. denied,* 493 U.S. 1081, 110 S.Ct. 1138, 107 L.Ed.2d 1043 (1990). Accordingly, we deny defendant Andino's argument that the Government lacked probable cause to arrest him.

### IV. Defendant Andino's Motion to Compel Disclosure of Information Concerning the Confidential Informant

Defendant Andino moves to compel disclosure of information concerning the confidential informant in this case. Def. Andino Memorandum at 5–7. Judge Conboy addressed at length the public and private concerns which militate against disclosure of such information. November 10, 1993 Amended Opinion and Order, pp. 26–29. For the reasons set forth there, we find that defendant Andino is not entitled to this information at this time.

### CONCLUSION

Accordingly, the motion of defendant Santos to join in the motions of all other defendants insofar as they inure to his benefit is

---

**7.** The Court notes that although defendant Andino was also named in the criminal Complaint in this case, attached to Exhibit 4 of the Gov't Memorandum, he was not arrested pursuant to that criminal Complaint. He remained a fugitive until after his indictment. Consequently, our evaluation of probable cause focuses solely upon the Indictment.

granted. The remaining motions of defendants Santos and Andino are denied.

SO ORDERED.